## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

TRYONE DAVIS,

       Plaintiff,

v.                                       Case No: 6:21-cv-534-WFJ-TGW

UNITED STATES OF AMERICA,

       Defendant.

_____/

## ORDER

This matter comes before the Court on the Government's Motion for Partial Summary Judgment, Dkt. 32, on Plaintiff Tyrone Davis's Complaint, Dkt. 2. Plaintiff filed a response in opposition, Dkt. 35, to which the Government replied, Dkt. 40. Upon careful consideration, the Court grants the Government's motion.

## BACKGROUND

On January 11, 2019, the U.S. Marshal Service ("USMS") apprehended Plaintiff for violating his federal supervised release after being charged with felony domestic violence in Florida state court. Dkt. 2 ¶ 4; Dkt. 32-1 at 1. Plaintiff was placed in the front passenger seat of a USMS vehicle driven by Deputy U.S. Marshal Jesse D. Bravo to be taken to the federal courthouse. Dkt. 32-2 at 39; Dkt. 32-10 at 3−7. Following Deputy Marshal Bravo's vehicle to the courthouse was

another USMS vehicle, which was driven by Deputy U.S. Marshal Cleveland Jenkins. Dkt. 2 ¶ 5−6. At one point during the drive, Deputy Marshal Bravo suddenly applied the brakes to avoid hitting the car ahead of him. Dkt. 32-10 at 3−7. Unable to stop in time, Deputy Marshal Jenkins' vehicle collided into the back of Deputy Marshal Bravo's vehicle. Dkt. 2 ¶ 7. The police report describes the collision as causing "minimal damage" to the rear passenger side of Deputy Marshal Bravo's vehicle. Dkt. 32-10 at 7.

Plaintiff did not report any injuries at the scene, *id.* at 7, nor did he subsequently report any injuries when he arrived at the federal courthouse, Dkt. 32-2 at 42−44. However, Plaintiff later claimed to have suffered "severe and permanent injuries" in the collision. Dkt. 2 ¶ 13. He states that he was diagnosed with a lumbar disc herniation, a cervical disc herniation, and a labral tear of his right hip. Dkt. 32-4 at 4−5. Plaintiff contends that these injuries have impaired his ability to operate his physical training business, Ty's Fitness, LLC. *Id.* at 3.

Plaintiff organized Ty's Fitness, LLC, in 2016 but only began earning revenue in 2018. *Id.* at 4; Dkt. 35 at 5. Prior to the January 2019 collision, Plaintiff states that his company was grossing about $1,148 per week through a fitness program he led. Dkt. 32-4 at 3. Plaintiff states that he was also leading volunteer fitness programs to promote his company and developing three new fitness programs that would have increased his company's revenue once launched. *Id.*

After the collision, Plaintiff contends that he had to cancel many fitness classes due to his injuries and was ultimately unable to launch his new programs. *Id.* Because he can no longer fully perform his role as a fitness trainer, Plaintiff asserts that his company has financially suffered. *Id.*

After filing an administrative claim against the USMS for damages, Dkt. 32-1 at 2, Plaintiff filed the present suit against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.* Plaintiff contends that Deputy Marshals Bravo and Jenkins engaged in negligence by failing to operate their vehicles in a reasonably prudent and safe manner. Dkt. 2 ¶¶ 11–12. Plaintiff avers that Deputy Marshal Bravo was following the car in front of him too closely, while Deputy Marshal Jenkins was driving too fast for conditions and following Deputy Marshal Bravo's vehicle too closely. *Id.* Plaintiff seeks to recover $1,500,000 in damages for past and future medical expenses, lost profits,[1] and pain and suffering. *Id.* at 3. The Government now moves for partial summary judgment. Dkt. 32.

## LEGAL STANDARD

A district court should grant summary judgment when it determines that there is no genuine issue as to any material fact and that the moving party is

---

[1] In his Complaint, Plaintiff seeks "lost wages [and] loss of future wages." Dkt. 2 at 3. He then describes these damages as "lost income . . . and/or earning capacity" and later states that he is seeking "lost profits or earnings." Dkt. 32-4 at 3−4; Dkt. 35 at 4−6. The Court therefore construes this claim as one for lost profits.

entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). An issue of fact is "material" if it is a legal element of the claim that might affect the outcome of the case. *Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997). An issue of fact is "genuine" if the record, in its entirety, could lead a rational trier of fact to find for the nonmovant. *Id.* The moving party bears the burden of demonstrating that no genuine issue of material fact exists. *Id.* Where "a party fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial," there is no genuine issue of material fact. *Celotex*, 477 U.S. at 322−23. If the movant carries its burden, the nonmovant must "come forward with specific facts showing that there is a genuine issue for trial." *Allen*, 121 F.3d at 646 (citations omitted).

In deciding a motion for summary judgment, a court must resolve all ambiguities and draw all inferences in favor of the nonmovant. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970); *Jackson v. BellSouth Telecomms.*, 372 F.3d 1250, 1280 (11th Cir. 2004). Upon doing so, the court must determine whether a rational jury could find for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Where reasonable minds could differ on the inferences arising from undisputed facts, a court should deny summary judgment. *Allen*, 121 F.3d at 646.

## ANALYSIS

In its present motion, the Government seeks summary judgment on two limited issues: (1) Plaintiff's lost profits claim and (2) Plaintiff's claimed medical diagnoses. The Court considers these issues in turn.

## I.  Lost Profits

Concerning the first issue before the Court, the Government contends that Plaintiff's claim for lost profits fails as a matter of law. "A party seeking to recover lost prospective profits bears the burden of proving the fact of damages and the extent of damages with reasonable certainty." *Kaplan v. Nautilus Ins. Co.*, 861 F. App'x 798, 803−04 (11th Cir. 2021) (internal quotes omitted). To establish the "fact of damages," a plaintiff must prove that the defendant caused the damages. *Id.* at 804 (citing *W.W. Gay Mech. Contractor, Inc., v. Wharfside Two, Ltd.*, 545 So. 2d 1348, 1351 (Fla. 1989)). A plaintiff cannot prove such causation through speculative testimony. *Id.* (citations omitted). Upon proving causation, a plaintiff must establish the "extent of the damages" by showing some standard by which the damages can be adequately determined. *Id.* (citations omitted).

Plaintiffs seeking to recover lost profits under Florida law generally rely on one of three methods: the before-and-after method, the yardstick test, or the projected sales method. *Nutrimatix Inc. v. Xymogen, Inc.*, No. 6:15-cv-790-Orl-37GJK, 2017 WL 385753, at *9 (M.D. Fla. Jan. 27, 2017). While Florida law does

not require the use any of these three methods, *id.*, one is relevant to the instant case. The yardstick test is used when a business has not been established long enough to have a sufficient earnings record. *Devon Med., Inc., v. Ryvmed Med., Inc.*, 60 So. 3d 1125, 1129 (Fla. 4th DCA 2011) (citation omitted). This test therefore looks to the profits of businesses comparable to that of the subject business. *Id.* (citation omitted).

Here, Plaintiff initially offered two ways to calculate the lost profits sustained by his fitness company in 2019 after the collision. Dkt. 32-4 at 4. Plaintiff first posited that his "lost income" is the difference between his company's 2018 gross revenue ($74,809) and 2019 gross revenue ($32,253). *Id.* Under this approach, he seeks $42,556 in damages. *Id.* Alternatively, Plaintiff stated that his "lost income" is the difference between his company's 2019 gross revenue ($32,253) and what he claims his company was projected to gross in 2019 ($160,176). *Id.* This calculation would lead to damages of $127,923. *Id.*

In its present motion, the Government noted that these two calculations are not reasonably certain methods of proving the extent of lost profits under Florida law, as they consider gross revenues without accounting for expenses. Dkt. 32 at 10−11. The Government explains that Plaintiff has not provided the accounting records of his business, nor has he disclosed any expert who will substantiate these otherwise speculative calculations. *Id.* at 8−10. According to the Government,

6

Plaintiff's lost profits claim is "essentially made-up." *Id.* at 2.

In his response to the Government's motion, Plaintiff abandons both of his initial calculations, conceding that lost profits calculations must account for business expenses. Dkt. 35 at 5−6. Plaintiff now asserts that his lost profits should be calculated through the aforementioned yardstick test. *Id.* Plaintiff points to his company's income tax filings from 2018 and 2019 that he previously disclosed to the Government, stating that his company's expenses can be derived from those documents. *Id.* at 6. However, the Government asserts that Plaintiff cannot now change his lost profit calculations, as the discovery cut-off in this case has already passed. Dkt. 40 at 4. The Government also notes that Plaintiff fails to even use the yardstick test, as he provides no profit comparisons between his business and similar businesses. *Id.*

Pursuant to Federal Rule of Civil Procedure 26(e), Plaintiff was required to supplement or correct his discovery responses "in a timely manner" upon learning that his response was incomplete or incorrect in some material respect. Fed. R. Civ. P. 26(e)(1). A party who fails to supplement or correct his discovery responses in such a manner "is not allowed to use that information . . . to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." Fed. R. Civ. P. 37(c)(1). In this case, Plaintiff asserted his two initial lost profit calculations in his discovery responses. After the discovery and

dispositive motion deadlines passed, *see* Dkt. 21 & 27, Plaintiff presented his new yardstick test approach in response to the Government's Motion for Partial Summary Judgment.

Plaintiff's failure to correct or supplement his discovery responses as required by Rule 26(e) was neither justified nor harmless. Plaintiff had ample opportunity to correct his lost profits calculation prior to the discovery cut-off yet offers no explanation for his failure to do so. Allowing Plaintiff to pursue this new, untimely theory set forth in his response to the Government's motion would prejudice the Government in its ability to adequately prepare for trial on the issue of lost profits. *See Circuitronix, LLC v. Shenzhen Kinwong Elec. (Hong Kong) Co.*, 993 F.3d 1299, 1307−08 (11th Cir. 2021) (affirming district court's exclusion of plaintiff's untimely lost profits computation even though plaintiff disclosed how it planned to compute its lost profits) (11th Cir. 2021); *see also Teletracking Techs., Inc. v. Orlando Health, Inc.*, No. 6:20-cv-1716-RBD-EJK, 2022 WL 1619539, at *5 (M.D. Fla. Apr. 29, 2022) (after having characterized its damages as lost "revenues" throughout litigation, plaintiff's late disclosure of its expenses and lost profits calculation was "far from harmless"). Plaintiff cannot present this late theory of lost profits to create a genuine issue of material fact to avoid summary judgment.

Even if Plaintiff's late disclosure of his new theory of lost profits was

justified or harmless, his presented calculation—or lack thereof—is insufficient to survive summary judgment. Plaintiff simply states that he will now be using the yardstick test without providing any lost profits computation under this new theory. He produced no accounting records for his business during discovery and admits that he knows little about his business's finances. Dkt. 32-1 at 3−4; Dkt. 32-2 at 16. While Plaintiff says that his business's two income tax returns show expenses that could be considered when utilizing the yardstick test, it is Plaintiff's burden—not the Government's—to prove the extent of his lost profits with reasonable certainty. *See Kaplan*, 861 F. App'x at 803−04. Relatedly, despite profit comparisons being the central focus of the yardstick test, Plaintiff provides no profit comparisons of his business and similar businesses. Plaintiff also fails to support his new lost profits theory with expert testimony. In sum, Plaintiff fails to prove the extent of his lost profits to a reasonably certain degree, which is an essential element of a claim for lost profits. *See Kaplan*, 861 F. App'x at 805.

Similarly, even if Plaintiff continued to pursue his initial lost profit calculations, his lost profits claim still fails to survive summary judgment. His two initial calculations are exclusively based on gross profits. In Florida, "evidence of lost profits has been found legally insufficient where the plaintiff relied solely on gross, rather than net, profits." *Seascape Aquarium, Inc. v. Associated Diversified Servs., Inc.*, 2018 WL 11383135, at *2 (M.D. Fla. Sept. 27, 2018) (citing *Fu Sheng*

9

*Indus. Co. v. T/F Sys., Inc.*, 690 So. 2d 617, 623 (Fla. 4th DCA 1997)).

Additionally, Plaintiff's original calculations are too speculative. For example,

though Plaintiff states that his business was projected to reach gross profits of

$160,176 in 2019 with the launching of his new programs, it is unclear how he

reached that figure. Prior to 2019, Plaintiff's business only reported revenue in

2018. Plaintiff's 2018 income tax return reflects that the business reported a gross

income of $74,809 but a net loss of $1,328. Dkt. 32-5 at 2. Plaintiff offers no

evidence to support his conclusion that his company's gross income would more

than double from 2018 to 2019 with the launch of these vague, new programs.

With no accounting records, expert testimony, or consideration of expenses,

Plaintiff's initial lost profits calculations fail to establish the extent of Plaintiff's

lost profits with reasonable certainty.

   Accordingly, regardless of which of these calculations Plaintiff now pursues,

the Government is entitled to summary judgment on Plaintiff's lost profits claim.

## II.  Medical Diagnoses

   Next, the Government takes issue with Plaintiff's claimed medical

diagnoses, averring that Plaintiff has not offered sufficient evidence to support the

existence of a labral tear of his right hip and herniations of his cervical and lumbar

spinal discs. Dkt. 32 at 14. The Government contends that because Plaintiff's

claimed diagnoses are not supported by expert testimony, it is entitled to summary

judgment on the issue of these diagnoses. Dkt. 32 at 15−21. Alternatively, the Government states that summary judgment is warranted because Plaintiff has offered no other support for his diagnoses. *Id.* at 21−24.

To the extent that the Government asserts that Plaintiff must provide expert testimony regarding the actual existence of his injuries, the Court is unaware of any such obligation when bringing a negligence claim under the FTCA. The Government has not cited, nor has this Court found, any binding case law that would require expert testimony to prove that Plaintiff was diagnosed with the injuries he claims. Establishing the existence of injuries by other competent evidence, such as medical records, is sufficient.

However, the Court agrees with the Government's alternative position that there is insufficient evidence to support Plaintiff's claimed diagnoses. As the Government correctly notes, the record before the Court contains no admissible evidence that Plaintiff was diagnosed with a labral tear or two herniations. Plaintiff's only expert witness, Dr. Manuel Gonzalez-Perez, did not offer an opinion as to the existence of Plaintiff's claimed injuries. Dkt. 32-9 at 5. Rather, Dr. Gonzalez-Perez formed a causation opinion by working under the assumption that Plaintiff's claimed injuries existed. *Id.*

There are no medical records before the Court, nor has Plaintiff disclosed any competent witness with personal knowledge of his diagnoses who will testify

at trial. While Plaintiff may testify to his subjective impressions of his injuries, he is a layperson who cannot draw inferences from those impressions or otherwise provide a medical opinion. *See Ozorowsky v. Bayfront HMA Healthcare Holdings, LLC*, No. 8:20-cv-2564-VMC-AEP, 2021 WL 4459655, at *2 (M.D. Fla. Sept. 29, 2021) (citations omitted). Nor can Plaintiff testify to statements of diagnoses purportedly made to him by his treating physicians if those statements are offered for the truth of the matter asserted. *See United States v. Buck*, 70 F.2d 1007, 1007 (5th Cir. 1934).[2] The Court finds that the Government has carried its burden of demonstrating a lack of evidence supporting the existence of Plaintiff's claimed injuries.

With the Government establishing this lack of evidence, the burden shifts to Plaintiff to "come forward with specific facts showing" a genuine issue for trial concerning the same. *See Allen*, 121 F.3d at 646. He has not done so. Instead, Plaintiff simply responds to the Government's motion by stating that the report and deposition testimony of Dr. Gonzalez-Perez confirms his injuries. Dkt. 35 at 7, 10. It does not.

Dr. Gonzalez-Perez expressly declined to offer any opinion as to Plaintiff's diagnoses or the existence of those claimed injuries, as he did not physically

---

[2] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

examine Plaintiff or review his medical imaging. Dkt. 32-9 at 5, 12, 16. He instead reviewed Plaintiff's medical records from 2019 and 2020 and determined that the 2020 medical evaluations and treatment of two of Plaintiff's claimed injuries—a lumbar disc herniation and a labral tear of the right hip—were causally related to the subject collision. Dkt. 32-8 at 4−7. However, Dr. Gonzalez-Perez conceded at his deposition that the medical records he reviewed did not conclusively diagnose Plaintiff with a labral tear. Dkt. 32-9 at 18−25. He further conceded that Plaintiff's purported lumbar disc herniation and labral tear could have occurred sometime before or after the 2019 collision. Dkt. 32-9 at 42−44. The expert did not consider Plaintiff's claimed cervical disc herniation. *Id.* at 26; Dkt. 32-8 at 4−7.

The Court has not seen Plaintiff's medical records that Dr. Gonzalez-Perez reviewed to form his causation opinion, as they are not in the record. It is unclear why Plaintiff did not attach his medical records to his Response to the Government's present motion in an attempt to show a genuine issue concerning his injuries. Even if Plaintiff had attached these medical records, neither Plaintiff nor Dr. Gonzalez-Perez can testify at trial to other physicians' statements of medical impressions and diagnoses contained therein absent some hearsay exception. And as previously noted, Plaintiff has not disclosed any other physician or competent witness who will testify to his diagnoses.

Because Plaintiff has not carried his burden of showing a genuine issue of

material fact concerning the existence of his injuries, the Government is entitled to summary judgment on this issue. Plaintiff cannot recover damages related to these purported injuries.[3]

## **CONCLUSION**

Accordingly, the Government's Motion for Partial Summary Judgment concerning Plaintiff's lost profits claim and purported diagnoses is **GRANTED**. Plaintiff cannot recover lost profits or damages related to his claimed diagnoses.

**DONE AND ORDERED** at Tampa, Florida, on August 15, 2022.

*/s/ William F. Jung*
**WILLIAM F. JUNG**
**UNITED STATES DISTRICT JUDGE**

**COPIES FURNISHED TO:**
Counsel of Record

---

[3] The Court notes that Plaintiff has alleged no other physical injuries aside from the labral tear and two herniations. *See* Dkt. 32-4.

14